UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THOMAS GESSWEIN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-597 |
| | § | |
| HUNTER & ROTH, PC, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

The Court now considers the self-styled "Defendants Thomas Hunter and Hunter & Roth, P.C.'s Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(1-3),"[1] filed by Thomas Hunter and Hunter & Roth, P.C. (collectively, "Defendants"), and the self-styled "Plaintiff Thomas Gesswein's Motion to Remand," filed by Thomas Gesswein ("Plaintiff").[2] Plaintiff has not responded to the motion to dismiss, filing his motion to remand instead; Defendants have responded to the motion to remand.[3]

After considering the motions, response, record, and relevant authorities, the Court **GRANTS** the motion to dismiss and **DENIES** the motion to remand.

I. Defendants' Representation and the Employment Agreement

In February 2012, Plaintiff's ex-wife sued him to enforce the terms of their Illinois divorce decree.[4] Plaintiff, residing in Texas, retained Defendants to represent him, allegedly because Defendants held out false hope about Plaintiff's legal prospects under Illinois law.[5] Plaintiff and Defendants executed an Employment Agreement, the final sentences of which

---

[1] Dkt. No. 3.
[2] Dkt. No. 7.
[3] Dkt. No. 8.
[4] Dkt. No. 1, Attach. 1 at pp. 10-11.
[5] *Id.* at pp. 11-12.

provide: "This agreement shall be governed, construed and enforced by the laws of the State of Illinois. Any action brought in relation to this agreement shall be heard in the Circuit Court of McHenry County."[6]

Plaintiff alleges that Defendants subsequently failed to work competently on the lawsuit[7] and demanded inappropriate amounts of money,[8] only to reveal Plaintiff had never had a prospect of success under Illinois law.[9] Plaintiff brought suit on October 25, 2013, in County Court at Law #5 of Hidalgo County. Defendants timely removed to this Court,[10] invoking the Court's jurisdiction on diversity grounds, and simultaneously filed a motion to dismiss.

## II. Plaintiff's Motion to Remand

To resolve any doubts over the Court's diversity jurisdiction, the Court will address Plaintiff's motion to remand before Defendants' motion to dismiss.

*Waiver of Right to Remove*

Plaintiff first argues that because the forum-selection clause chooses an Illinois county court as the forum, Defendants have waived their right to remove to Federal court.[11] As Defendants point out, Plaintiff attempts to accept the clause's validity for purposes of his remand, but deny its validity for purposes of his lawsuit, yielding an incoherent argument.[12] Moreover, cases in which a forum-selection clause waives the right to remove involve a party seeking to escape the clause by removing from the contractually-mandated state court to federal court; in such situations remand is proper.[13] Here, Plaintiff seeks to escape the clause, and

---

[6] Dkt. No. 3, Attach. 1 at p. 8, ¶17.
[7] Dkt. No. 1, Attach. 1 at pp. 14-16.
[8] *Id.* at pp. 16-17.
[9] *Id.* at p. 18.
[10] Dkt. No. 1.
[11] Dkt. No. 7 at p. 3.
[12] Dkt. No. 8 at pp. 1-2.
[13] *See* GP Plastics Corp. v. Interboro Packaging Corp., 108 F. App'x 832 (5th Cir. 2004); City of New Orleans v. Mun. Admin. Servs., Inc., 376 F.3d 501, 503 (5th Cir. 2004).

Defendants ask the Court to enforce the clause. In such situations, courts enforce the forum-selection clause.[14]

Indeed, the situations when one party disregards a forum-selection clause are emphatically those situations when the diverse party may wish to avail itself of the protection of Federal court. The out-of-state party seeking to escape to the refuge of the home state has every reason to seek the aid of the Federal courts.

*Amount in Controversy*

In his second argument for remand, Plaintiff asserts that his petition asks only for disgorgement of profits, or $21,700.78, well below the amount-in-controversy requirement.[15] To discern the amount in controversy, the Court looks to the State court petition,[16] where Plaintiff alleges that "Defendants are jointly and severally liable for all of Plaintiff's damages,"[17] and also asks for pre- and post-judgment interest and exemplary damages.[18] As Defendants point out, Plaintiff alleges his damages include, in addition to the fees, a $20,000 fine and a contempt of court citation.[19] Exemplary damages in Texas may be awarded up to two times the amount of economic damages, plus an amount equal to any noneconomic damages found by the jury, or $200,000, whichever is greater.[20] Since Plaintiff has alleged over $41,000 in damages, Plaintiff could receive an additional $82,000 or $200,000, but need receive only $34,000 to exceed the amount-in-controversy requirement.

---

[14] *See* Int'l Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 113 (5th Cir. 1996); Hartash Const., Inc. v. Drury Inns, Inc., 252 F.3d 436 (5th Cir. 2001).
[15] Dkt. No. 7 at p. 4. *See* 28 U.S.C. §1332(a).
[16] *See* Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) ("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal.").
[17] Dkt. No. 1, Attach. 1 at p. 19.
[18] Dkt. No. 1, Attach. 1 at pp. 19-20.
[19] Dkt. No. 1, Attach. 1 at p. 18.
[20] TEX. CIV. PRAC. & REM. CODE 41.008(b).

As a result, the amount in controversy is met from the face of the petition. The diversity of the parties has not been challenged, and the Court possesses diversity jurisdiction over the case. The Court **DENIES** the motion to remand.

### III. Defendants' Motions to Dismiss

Defendants ask the Court to dismiss the case on two grounds. First, the forum-selection clause mandates the case be tried in McHenry County, Illinois.[21] Second, courts sitting in Texas lack personal jurisdiction over Defendants.[22] Finding the forum-selection clause sufficient, the Court will address only that argument. The Court will first determine whether the forum-selection clause is mandatory or permissive, then determine whether it should be enforced, and finally analyze how it should be enforced.

*Is the Clause Mandatory or Permissive?*

When considering a forum-selection clause, the Court first looks to see whether it is permissive or mandatory.[23] "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."[24]

The forum-selection clause here is mandatory, not permissive. It uses the imperative *shall* not once, but twice.[25] It names a specific non-federal court, the Circuit Court, in a specific location, McHenry County. Thus, this clause clearly demonstrates the parties' intent to make the Circuit Court of McHenry County the exclusive jurisdiction.

---

[21] Dkt. No. 3 at pp. 3-5.
[22] *Id.* at pp. 5-8.
[23] *See* Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127 (5th Cir. 1994) ("Accordingly, before determining whether a forum selection clause is mandatory and thus enforceable under the M/S Bremen line of cases, we must determine whether we are here presented with a mandatory forum selection clause or merely a permissive one.").
[24] City of New Orleans v. Mun. Admin. Servs., Inc., 376 F.3d 501, 504 (5th Cir. 2004).
[25] Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006) (finding that the use of "shall" *requires* enforcement of a forum-selection clause).

*Should the Clause be Enforced?*

Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a "heavy burden of proof."[26] When a mandatory forum-selection clause applies, the party opposed may escape only by showing it is unreasonable. Here, Plaintiff could do that by demonstrating that: "(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. The party resisting enforcement on these grounds bears a heavy burden of proof."[27] Plaintiff has not seen fit to respond to the motion to dismiss, so the Court will briefly rehearse the elements of unreasonableness.

First, there is no evidence here that the forum-selection clause was the product of fraud or overreaching. Further, as the two final sentences of the contract before the parties' signatures, the forum-selection clause occupies a prominent position likely to draw attention.

Second, Plaintiff has not suggested that he would be unable to press his claim in Illinois. Though it is true that the lawsuit went poorly, that this action arises from a previous lawsuit in Illinois suggests that Plaintiff has some experience in litigating from a distance.

Third, the Court sees no reason to impute to Illinois law a fundamental unfairness that would deprive Plaintiff of a remedy.

---

[26] Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 441 (5th Cir. 2008).
[27] Haynsworth v. The Corp., 121 F.3d 956, 963 (5th Cir. 1997).

Fourth, Texas' public policy weighs in favor of enforcing forum-selection clauses,[28] so the clause contravenes no strong public policy of the forum state.

The Court will mention one more argument Plaintiff might have raised but did not. Defendants characterize this action as a legal malpractice suit, asserting that all the claims "are based on the attorney-client relationship between the parties and Defendants' representation of Plaintiff in the Illinois post-divorce proceeding."[29] This opportunistic characterization misconstrues Plaintiff's central claim, which is not that Defendants represented him ineptly, but that Defendants dishonestly induced him to engage their services. Plaintiff's claim of negligent representation, based as it is on statements allegedly uttered before the parties executed the Employment Agreement, raises the question of scope. Does the forum-selection clause also cover pre-contractual misrepresentations? It does.

> "As here, the alleged fraudulent acts underlying the claims in *Haynsworth* occurred before the parties entered into the agreement with the forum selection clause . . . '[A]llegations of such conduct as to the contract as a whole – or portions of it other than the [forum selection] clause – are insufficient; the claims of fraud . . . must be aimed straight at the [forum selection] clause . . . to succeed.' The alleged fraud in the instant case is not specific to the forum selection clause."[30]

Forum-selection clauses operate like arbitration clauses, in that courts will enforce them while entertaining challenges to the validity of the underlying contract. Otherwise, the clauses would be rendered toothless, and parties would be deprived of the ability to contract dispute forums or mechanisms. Here, Plaintiff alleges Defendants' negligent or intentional misrepresentation lured him into retaining them, but this allegation relates to the contractual

---

[28] *See* In re AIU Ins. Co., 148 S.W.3d 109, 117 (Tex. 2004) (concluding that "the State of New York is not a remote alien forum" as would weigh against the forum-selection clause, and noting that "Subjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment. There is no benefit to either the individual case or the judicial system as a whole.").
[29] Dkt. No. 3 at p. 4, ¶3.
[30] Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 616-17 (5th Cir. 2007) (internal citations omitted).

relationship as a whole. As a result, this claim and the suit as a whole are subject to the forum-selection clause.

*How May the Forum-Selection Clause Be Enforced?*

Having concluded the Court possesses diversity jurisdiction over the case, the forum-selection clause is mandatory, and the forum-selection clause should be enforced and covers this case, the Court is left with the question of enforcement. Defendants ask the Court to dismiss the case under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3). This request was correct at time of filing; at that time courts in the Fifth Circuit dismissed cases like this under Rule 12(b)(3). However, on December 3, 2013, the Supreme Court of the United States wrote, overruling the Fifth Circuit: "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[31] This doctrine "involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else."[32] Because Defendants brought their motion prior to the Supreme Court's decision, the Court will construe it as a motion for dismissal through the doctrine of *forum non conveniens*.

A typical *forum non conveniens* analysis involves a variety of factors. In *Atlantic Marine*, the Supreme Court notes that a valid forum-selection clause heavily weights the *forum non conveniens* analysis: Plaintiff's choice of venue merits no weight, and neither do the parties' private interests of convenience. The Court is left with public interests, which rarely control the

---

[31] Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 12-929, 2013 WL 6231157 (U.S. Dec. 3, 2013).

[32] Norwood v. Kirkpatrick, 349 U.S. 29, 31, 75 S. Ct. 544, 546, 99 L. Ed. 789 (1955) (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)).

outcome.[33] "[T]he practical result is that forum-selection clauses should control except in unusual cases."[34]

The Fifth Circuit has previously concluded that if private interest factors weigh in favor of dismissal, then courts need not consider public interest factors.[35] The Supreme Court's mandate combined with the Fifth Circuit's truncated analysis would lead to a one-step analysis: a forum-selection clause would simultaneously overpower the private interest factors and render the public interest factors irrelevant.

The Court need not prognosticate whether the Fifth Circuit will maintain this one-step analysis.[36] Here, the public interest factors also weigh in favor of dismissal.[37] To this extent this controversy is localized, it is localized in Illinois, the source of the law allegedly misrepresented and the location of the divorce. Thus Illinois has a greater local interest in this controversy than Texas does. The contract chose Illinois law to govern it, and an Illinois court will be better positioned to apply Illinois law. This choice of law also means that an Illinois court will not need to conduct a conflict of law analysis.

---

[33] Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 12-929, 2013 WL 6231157 FN 6. (U.S. Dec. 3, 2013) ("Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law . . . The Court must also give some weight to the plaintiffs' choice of forum." (internal citations omitted)).

[34] Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 12-929, 2013 WL 6231157 (U.S. Dec. 3, 2013).

[35] Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G., 955 F.2d 368, 376 (5th Cir.1992) (finding "no need to consider the public interest factors" when the "balance of private interest factors favor[ed] dismissal").

[36] Elsewhere the Fifth Circuit has noted, "The [Supreme] Court has emphasized that no one private or public interest factor should be given conclusive weight, and that the plaintiff's initial choice of forum should usually be respected." Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 342 (5th Cir. 1999).

[37] See DTEX, LLC v. BBVA Bancomer, S.A., 508 F.3d 785, 794 (5th Cir. 2007) ("The 'public interest' factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having a the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.").

The Court concludes that the forum-selection clause and the public interest factors weigh heavily in favor of finding *forum non conveniens*.

### IV. Holding

The Court possesses diversity jurisdiction over this case. Defendants correctly removed to this Court. The forum-selection clause is mandatory, should be enforced, covers this action, and satisfies the *forum non conveniens* analysis. Accordingly, the Court **GRANTS** Defendants' motion to dismiss. The case is **DISMISSED**.

IT IS SO ORDERED.

DONE this 16th day of December, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE